FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 1 4 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

JOHNNIE L. PETWAY                                    :

                        Plaintiff,                   :

            -against-                                :

CITY OF NEW YORK, POLICE OFFICER                     :
CHRISTOPHER DEDE, SERGEANT ADAM                      :
KASZOVITZ, and "JOHN" JAMES (first name unknown) :

                        Defendants.                  :
------------------------------------------------------------------ X

10-CV-01048 (ARR) (LB)

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

Plaintiff, Johnnie L. Petway, brings this action pursuant to 42 U.S.C. § 1983 against

defendants City of New York and Police Officers Christopher Dede, Adam Kaszovitz, and John

Doe #3 of the New York City Police Department ("NYPD"). He seeks to hold defendants liable

for violations of his constitutional rights during an incident taking place outside of his home

located at 556 Gates Avenue in Brooklyn on December 2, 2008. Now before the court is

defendants' motion for summary judgment. For the reasons set forth below, defendants' motion

for summary judgment is granted in part and denied in part.

## I. BACKGROUND

The following facts are drawn primarily from plaintiff's deposition testimony and the

parties' respective statements pursuant to Local Rule 56.1.[1] See Deposition of Johnnie L.

---

[1] Defendants correctly note that plaintiff fails in his Local Rule 56.1 statement in opposition to cite the record or submit affidavits in support of his factual assertions. Plaintiff, though proceeding pro se, was informed of his obligations pursuant to Rule 56.1 to submit evidence countering the facts asserted by defendants, and, moreover, is no stranger to this court. Nevertheless, a district court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and may review the record in determining whether proposed undisputed facts were disputed. Holtz v.Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001); see also Rateau v. City of N.Y., No. 06–CV–4751 (KAM)(CLP), 2009 U.S. Dist. LEXIS 90112, at *2 (E.D.N.Y. Sept. 29, 2009). Accordingly, the court will deem admitted those facts that appear uncontroverted by the evidence in the record.

Petway, March 15, 2011 ("Pl. Dep."), annexed as Ex. C to the Declaration of Alexandra Corsi, dated September 26, 2011 ("Corsi Decl."). The facts are undisputed except where otherwise noted.

On December 2, 2008, plaintiff lived with his then-wife Sharmaine Edwards in a house located at 556 Gates Avenue, Brooklyn, New York. The front of the four-story, eight-family home is protected by a ten-foot external fence with a gate secured by a chain-link padlock. Pl. Dep. at 22, 29, 32, 35. On the late evening of December 2, 2008, Petway had returned from a day at physical therapy and visiting his mother at the hospital. Id. at 29. No lights were on either inside or in front of the house and the nearest street light was approximately fifty feet away. Id. at 27, 39. At approximately 11:00 p.m., just outside of the external gate, plaintiff and the defendant officers had a prolonged interaction that resulted in plaintiff's arrest for attempted burglary and disorderly conduct. What transpired during this interaction is the subject of considerable dispute.

According to plaintiff, he returned home at approximately 11:00 p.m. While unlocking the external gate from the outside, he noticed an unmarked black Chevy Impala driving by. Id. at 29-31. As he had many times before, he unlocked the padlock quickly and easily before entering his home. Approximately three or four minutes later, plaintiff left his house and exited the external gate to retrieve an item he had forgotten in his car. Id. at 31. Because he was "getting ready to go right back inside," plaintiff left the external gate unlocked. Id. at 32.[2] The Chevy Impala, which presumably circled around to pass by plaintiff's home again, then came to a sudden stop in front of the gate. Id. at 36. Two police officers "jumped right out of the car" and "rushed towards [Petway]," telling him not to move and asking "what [he] was doing there." Id.

---

[2] It is unclear from the record whether plaintiff left the gate unlocked when he returned home from the hospital, or whether he left the gate unlocked only after he left to retrieve an item from his automobile.

According to plaintiff, he explained to the officers that "[he] live[s] here [and he] own[s] the place." Id. The officers then asked for identification. Id. Plaintiff stated that he had identification in his pocket, which, per the officers' instruction, he dropped on the ground for inspection. Id. at 36-37. Plaintiff's identification recorded the address of his residence as 556 Gates Avenue, Brooklyn, New York. During this interaction he "spoke firmly [to the police officers], and [] stated [his] objections to their procedure," but did not become violent or resistant. Id. at 39-40. Plaintiff was subsequently handcuffed and placed in the backseat of the black Impala. Pl. Dep. at 38,44; Affidavit of Sergeant Adam Kasovitz ("Kasovitz Aff."), annexed as Ex. A to Corsi Decl., at ¶ 6. From the back of the police automobile, plaintiff then observed two officers enter and remain in his residence for approximately five to ten minutes. Pl. Dep. at 40-41. The officers returned to the vehicle and transported plaintiff to the 79th Precinct, where plaintiff once again provided his identification to the officers before being placed in a "very filthy cell with a toilet." Pl. Dep. at 45-46. Two or three hours later, the officers at the Precinct released plaintiff and issued him a desk appearance ticket for disorderly conduct. Id. at 46-47. Plaintiff alleges that he was exposed to "some kind of bacteria" and became "violently ill some months later." Id. at 53-54.

Defendants' view of the incident differs markedly. According to defendants, while driving on patrol in an unmarked police vehicle at approximately 11:00 p.m., Sergeant Kaszovitz and Police Officer Christopher Dede observed plaintiff walking eastbound on Gates Avenue when he stopped in front of the gate outside 556 Gates Avenue. Kaszovitz Aff. at ¶ 3,4. Kaszovitz observed plaintiff "fidgeting with the lock and unable to gain entry" for approximately two to three minutes. Id. Because plaintiff was struggling with the padlock, there were no lights on in front of the house, and the officers knew that the neighborhood was a "high crime area . . .

specifically known for burglaries, robberies and grand larcenies," Kaszovitz and Dede believed

they were witnessing an attempted burglary. Id. at ¶ 5. Defendants exited the unmarked police

car, approached plaintiff, and asked "why he was fidgeting with the lock." Id. at ¶ 6. According

to Kaszovitz, plaintiff reacted in a "violent and tumultuous manner, . . . made verbal threats to

[the officers,] . . . refused to answer our questions," and walked away from them. Id. at ¶ 7.

Defendants then arrested plaintiff, believing at the time that plaintiff would be charged with

Attempted Burglary and Disorderly Conduct. Id. at ¶ 8. According to defendants, when

plaintiff—for the first time—produced at the 79th Precinct identification showing his address,

plaintiff was charged solely with Disorderly Conduct and issued a Desk Appearance Ticket on

for his alleged resistance to the police officers and "violent and tumultuous" conduct. Id.

Plaintiff filed the instant complaint on March 2, 2010. On October 18, 2010, plaintiff

accepted an Adjournment in Contemplation of Dismissal of the Disorderly Conduct charge.

## II. DISCUSSION

The court liberally construes plaintiff's pro se complaint to assert § 1983 claims for false

arrest, unlawful entry into his home, and unconstitutional conditions of confinement under the

Fourth, Eighth and Fourteenth Amendments of the Constitution, as well as analogous state law

claims.[3] Defendants have moved for summary judgment on the grounds that (1) there was

probable cause to arrest plaintiff for suspected burglary, (2) in the alternative, there was

reasonable suspicion to temporarily stop plaintiff for suspected burglary which ripened into

probable cause in light of plaintiff's subsequent conduct, (3) Officers Dede and Kasovitz are

entitled to qualified immunity; (4) no evidence in the record supports plaintiff's claim that he

was subjected to unconstitutional conditions of confinement; (5) plaintiff cannot establish

---

[3] Plaintiff's complaint also alleges, in conclusory fashion, violations of the First and Third Amendments of the Constitution. As the facts of this case provide no grounds for relief under these amendments given the facts alleged, these claims are dismissed and require no further discussion.

municipal liability against defendant City of New York; and (6) that plaintiff's potential state law claims should be dismissed for his failure to comply with New York State notice of claim requirements, or, in the alternative, for lack of subject matter jurisdiction.

## A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and ellipses omitted)).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003) (internal quotation marks omitted)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment against it, the non-moving party "must come forward with specific facts showing that

there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (citing Anderson, 477 U.S. at 255).

**B.    Plaintiff's § 1983 Claims**

In order to make out a claim under 42 U.S.C. § 1983, plaintiff must allege (1) that the challenged conduct was "committed by a person acting under the color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or the laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F. 3d 545, 547 (2d Cir. 1994)). Plaintiff must therefore establish the "personal involvement of defendants in alleged constitutional deprivations." Faird v. Ellen, 593, F.3d 233, 249 (2d Cir. 2010); see also Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citations and internal quotation marks omitted). As noted, platiniff alleges the he was subjected to false arrest, unlawful entry into his home, and unconstitutional conditions of confinement in violation of § 1983.

1.  False Arrest

A § 1983 claim for false arrest requires proof of the same four elements as a claim for false arrest under New York law: (1) the defendant intentionally confined plaintiff, (2) plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); Harris v. County of Nassau, 581 F.Supp.2d 351, 354-55 (E.D.N.Y. 2008); Broughton v.

State, 37 N.Y.2d 451, 456 (1975). If probable cause exists at the time of arrest, the confinement

is privileged. Jocks, 316 F.3d at 135; Martinez v. City of New York, 340 Fed. Appx. 700, 701

(2d Cir. 2009). Thus, the existence of probable cause constitutes a complete defense to a false-

arrest claim. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999).

Defendants argue that defendants Dede and Kaszovitz had probable cause to arrest

plaintiff for attempted burglary based on his suspicious behavior in front of the a locked gate at

11:00 p.m. in an unlit area known for high crime; or, alternatively, that defendants had

reasonable suspicion that a crime was underway justifying a temporary "stop and frisk," and that,

based on plaintiff's conduct over the course of the investigatory stop, this reasonable suspicion

ripened into probable cause to arrest him for Disorderly Conduct. [4]

a. *Probable Cause that Plaintiff was Committing a Burglary*

"[A]n arresting officer's state of mind . . . is irrelevant to the existence of probable

cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004) (citing Whren v. United States, 517 U.S.

806, 812-13 (1996)). Evaluating whether or not probable cause to arrest exists, therefore, is an

objective inquiry. See Whren, 517 U.S. at 813 ("[T]he fact that the officer does not have the

state of mind which is hypothecated by the reasons which provide the legal justification for the

officer's action does not invalidate the action taken as long as the circumstances, viewed

objectively, justify that action.") (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

Moreover, the crime identified by the officer at the time of the arrest—or the booking officer—

need not be supported by probable cause, as long as there existed probable cause to arrest for

---

[4] Defendants also move to dismiss plaintiff's false arrest claim against Kaszovitz on the grounds that Kaszovitz was not personally involved in the arrest, as plaintiff alleges only that Officers Dede and an unidentified officer "James" executed plaintiff's arrest. According to Kaszvotiz's affidavit, however, he was present with Dede at the time of plaintiff's arrest. Because the record before the court is unclear as to who executed the stop and arrest and who was present, the court cannot summarily dismiss plaintiff's claims against Kaszovitz based on his lack of personal involvement.

some crime. Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and [] it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest."). The offense establishing probable cause to arrest need not even be "'closely related to', [or] based on the same conduct as, the offense identified by the arresting officer." Devenpeck, 543 U.S. at 154.

Defendants argue that under the totality of the circumstances, defendants had probable cause or, in the alternative, reasonable suspicion, to believe that plaintiff was attempting to burglarize 556 Gates Avenue. Defendants cite the following asserted facts in support of their argument that there was probable cause to arrest: (1) they observed plaintiff "fumbling with the padlock for two to three minutes"; (2) it was late at night; (3) the area was unlit; and (4) defendants were aware that Gates Avenue was "high crime" area with frequent burglaries. See Def. Memorandum of Law at 11-12. Because the most salient of these asserted facts are disputed, and because the undisputed facts alone fail to justify plaintiff's arrest, summary judgment is not appropriate on plaintiff's false arrest claim.

Drawing all inferences in favor of plaintiff, as the court must do at this stage, the court cannot find as a matter of law that there exited probable cause to believe that plaintiff was committing a burglary. Contrary to defendants' claim that plaintiff fumbled with the padlock for two or three minutes, plaintiff's deposition testimony establishes either that the padlock of the external gate was already open when the officers observed him, or, that he quickly unlocked the gate with his key. Under plaintiff's view of the facts then, all that supported his arrest for suspected burglary was his presence at night in a high-crime neighborhood. Plaintiff's presence in a high crime area without more, however, is not sufficient to establish probable cause. See

Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.") Ybarra v. Illinois, 444 U.S. 85, 91 (1979) (finding that a person's "mere propinquity" to a known location of criminal activity "does not, without more, give rise to probable cause"). Moreover, plaintiff testified that he presented his identification upon the officers' request before he was arrested. If true, the address listed in the identification would have immediately dispelled any suspicion that he was committing a burglary. Accordingly, the court cannot find as a matter of law that the defendant officers had probable cause to arrest plaintiff for attempted burglary.

b. *Probable Cause that Plaintiff was Guilty of Disorderly Conduct*

Defendants propose an alternative theory in support of their motion for summary judgment: Kaszowitz and Dede—based on the time of night, plaintiff's suspicious actions trying to open the gate, and their knowledge of the area—had "reasonable suspicion" to stop and frisk plaintiff. Plaintiff's resistance and difficult behavior over the course of the investigatory stop, defendants contend, caused their reasonable suspicion to ripen into probable cause to arrest plaintiff for Disorderly Conduct. United States v. Brockington, 378 Fed. App'x 90, 92 (2d Cir. 2010) ("[R]easonable suspicion may develop into probable cause based on events unfolding during an investigative stop.") This argument fails there is a genuine issue of disputed fact as to whether the officers had "reasonable suspicion" to believe that plaintiff was engaged in criminal activity justifying an investigatory stop. Moreover, even assuming *arguendo* that the defendant officers had reasonable suspicion to temporarily detain plaintiff, there are also disputed issues of material fact as to whether plaintiff's conduct during the investigatory stop was such that the officer's suspicion ripened into probable cause to arrest him for Disorderly Conduct.

Even absent probable cause to arrest, law enforcement officers may temporarily detain and frisk a criminal suspect (a "Terry stop") upon "reasonable suspicion." See Terry v. Ohio, 392 U.S. 1 (1968). "Reasonable suspicion has been defined as the quantum of knowledge sufficient to induce an ordinary prudent and cautious man under the circumstances to believe that criminal activity is at hand." United States v. Cummings, 764 F. Supp. 2d 480, 504 (E.D.N.Y. 2011). "[W]here an officer has a reasonable basis to think that the person stopped poses a present physical threat to the officer or others, the Fourth Amendment permits the officer to take 'necessary measures . . . to neutralize the threat' without converting a reasonable stop into a de facto arrest." United States v. Newton, 369 F.3d 659, 674 (2d Cir. 2004).

Here, accepting plaintiff's view of the facts, his merely entering his unlocked chain fence at 11:00 p.m. is insufficient to establish that a reasonable officer would "believe that criminal activity is at hand." Cummings, 764 F. Supp.2d at 504. While presence in a "high-crime area" is a relevant factor in determining whether police have reasonable suspicion, that fact alone is insufficient to support a "reasonable, particularized suspicion." Wardlow, 528 U.S. at 124; Brown v. Texas, 443 U.S. 47, 52n (1979) ("The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct."); cf United State v. McCargo, 464 F.3d 192, 197 (2d Cir. 2006) (finding reasonable suspicion to justify an investigatory stop where police found defendant not only the lone pedestrian at night in high-crime area, but also in close proximity to a crime scene just a few minutes after a 911 call reported a burglary attempt). Because are issues of disputed fact as to whether defendants had any other reason to believe that plaintiff was engaged in criminal conduct other than his presence in a high-crime area at night, the court cannot find as a matter of law that defendants had reasonable suspicion to conduct an investigatory stop.

Even accepting *arguendo* that the initial stop was justified, however, there are also genuine issues of material fact as to whether defendants' reasonable suspicion ripened into probable cause to arrest plaintiff for disorderly conduct. Although defendants contend, rather vaguely, that plaintiff acted in a "violent and tumultuous manner," made "verbal threats," refused to answer questions, and walked away from the police officers, plaintiff flatly denies these allegations, having testified at his deposition the he merely that he spoke "stern[ly]" to the officers and expressed his disapproval of their "procedure." Construing the facts in the light most favorable to plaintiff, plaintiff's conduct during the course of the investigatory stop fell short of ripening into probable cause to arrest for disorderly conduct. [5]

c. *Qualified Immunity*

As an alternative, defendants also move against plaintiff's false arrest claim on the basis of qualified immunity. Again, because there are significant facts in dispute about what happened on the night of December 2, 2008, I conclude that defendants are not entitled to summary judgment, even on the basis of qualified immunity.

The doctrine of qualified immunity shields police officers from personal liability for damages for "official conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ricciuti, 124 F.3d at 127 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). An officer is therefore entitled to qualified immunity from damages for false arrest: (1) if it was objectively reasonable for the officer to

---

[5] Under New York Penal Law § 240.20, disorderly conduct is defined as follows:
> a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: [1] He engages in fighting or in violent, tumultuous or threatening behavior; [2] He makes unreasonable noise; [3] In a public place, he uses abusive or obscene language, or makes an obscene gesture; [4] Without lawful authority, he disturbs any lawful assembly or meeting of persons; [5] He obstructs vehicular or pedestrian traffic; [6] He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or [7] He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.

believe that there was probable cause to make the arrest, or (2) if reasonably competent police officers could disagree as to whether there was probable cause to arrest. Ricciuti, 124 F.3d at 128. In addressing qualified immunity, the focus is not on the "correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene." Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995). Defendants are not entitled to summary judgment "if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable." Id. at 420. An officer's actions are objectively unreasonable if no reasonably competent officer would have acted the same way under similar circumstances. Id. at 420-21.

Although immunity is usually an issue for the court, where material facts are disputed, "jury consideration is normally required." Oliveira, 23 F.3d at 649; see also Curry v. City of Syracuse, 316 F.3d 324, 334-35 (2d Cir. 2003) (summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain); Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002) (where the circumstances are in dispute, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity); McKelvie v. Cooper, 190 F.3d 58, 63 (2d Cir. 1999) ("Where, as here, there are facts in dispute that are material to a determination of reasonableness, summary judgment on qualified immunity grounds is not appropriate."); Weyant, 101 F.3d at 852 (holding summary judgment appropriate only if no dispute exists "as to the pertinent events and the knowledge of the officers"). Here, summary judgment on the grounds of qualified immunity is inappropriate because the essential factual circumstances leading up to plaintiff's stop and arrest are in dispute. These disputes bear directly upon whether it was objectively reasonable for defendants to believe that they were

acting lawfully, foreclosing summary judgment on qualified immunity grounds. See Oliveira, 23 F.3d at 650.

## 2. Warrantless Entry Into Plaintiff's Home

Plaintiff also alleges that the defendant officers unlawfully entered his home without a warrant and without probable cause. Under the Fourth Amendment, individuals are protected against unreasonable searches and seizures. See U.S. Const. Amend. IV. In the case of a home, reasonableness requires that the search be conducted pursuant to a warrant or meet one of the few exceptions to the warrant requirement. See Kyllo v. United States, 533, U.S. 27, 31 (2001) ("[W]ith few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered no."); Payton v. New York, 445 U.S. 573, 585 (1980) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.").

Plaintiff testified at his deposition that two police officers entered his home without a warrant or other lawful basis and remained there for five to ten minutes while he was detained in the back of the police automobile. Pl. Dep. at 40-41. Defendants have neither contested the fact that the officers entered the house located at 556 Gates Avenue, nor argued that their entry was authorized by a warrant or justified by an exception to the warrant requirement. Accordingly, plaintiff's cause of action for unlawful entry survives defendants' motion for summary judgment.

## 3. Unconstitutional Conditions of Confinement

The court also construes plaintiff's complaint as challenging the conditions of his confinement at the 79th Precinct. When evaluating a claim for unconstitutional conditions of confinement, the court looks to whether the "challenged conditions amount to 'punishment' without due process of law." Cruz v. Reiner, 11 Civ. 2131 (BMC)(SMG), 2011 U.S. Dist.

13

LEXIS 14992, at *13 (E.D.N.Y. Dec. 13, 2011) (citing Bell v. Wolfish, 441 U.S. 520, 435 (1979)); see also United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999) (holding that Eighth and Fourteenth Amendment tests that apply to the claims of pre-trial detainees and sentenced convicts, respectively, are essentially the same). This test includes both a subjective component, focusing on the defendant's motive for his conduct, and an objective component, focusing on the conduct's effect on the plaintiff. Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) (citing Hudson, 503 U.S. at 7-8). The subjective component turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The objective component turns on whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation" in light of "contemporary standards of decency." Id. at 8 (internal quotation marks and citations omitted).

Plaintiff alleges that he was subjected to "all kinds of pathogens" while in police custody for two or three hours in a "dirty cell." Pl.'s Complaint at ¶ III. Sec. C. Plaintiff also alleges that he became "violently ill some months later" with some "never identified" bacterial infection, which, he maintains, must have been caused by his confinement because the precinct is "full of bacteria." Pl.'s Dep. at 54-56. Plaintiff's allegations are conclusory, speculative, and unsupported by the record. Because there is no evidence, other than plaintiff's own speculation, that his unidentified infection months later was caused by his brief incarceration or that his conditions of confinement otherwise fell below "contemporary standards of decency," summary judgment is granted on this claim. Hudson, 503 U.S. at 8; see also, e.g., Ortiz v. Dep't of Corr., 08 Civ. 2195 (RJS)(HBP), 2011 U.S. Dist. LEXIS 71897 (S.D.N.Y. April 29, 2011) (dismissing claim where plaintiff's exposure to "sewage overflow" lasted less than 24 hours and collecting cases dismissing claims where plaintiffs allege only temporary or limited exposure to unsanitary

conditions of confinement); Evans v. Fogg, 466 F. Supp. 949, 950 (S.D.N.Y. 1979) ("To be kept in a refuse-strewn cell for 24 hours and in a flooded cell (a condition resulting from [plaintiff's] own acts) for two days is a rough experience, but, since neither condition persisted for more than a limited period of time, it cannot be said that the condition amounted to cruel and unusual punishment.").

### 4. Municipal Liability

A municipality may not be held liable for its employees' constitutional violations under a general theory of respondeat superior. Monell, 436 U.S. at 694. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. Therefore, in order to impose § 1983 liability on a municipality for the acts of its employees, a plaintiff must plead and prove (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) the denial of a constitutional right. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). "A plaintiff may prove a municipal policy or custom by showing that: (i) the employees' unconstitutional acts are officially sanctioned or ordered by the municipality; (ii) the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (iii) the unconstitutional acts were by individuals with final policymaking authority." Porter v. City of New York, No. 03-cv-6463, 2007 WL 1791149, at *7 (E.D.N.Y. June 19, 2007) (internal quotation marks omitted) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988); Pugliese v. Long Island R.R., No. 01-CV-7174, 2006 WL 2689600, at *3 (E.D.N.Y. Sept. 19, 2006)).

Plaintiff fails to allege any facts beyond the single incident underlying the instant action suggesting a government policy or custom causing the violation of his constitutional rights. Accordingly, plaintiff's claims against the City of New York are dismissed.

## C.     Plaintiff's State Law Claims

New York General Municipal Law § 50-e and § 50-i requires an individual to file a notice of claim with the New York City Comptroller before commencing any action in tort against a municipal entity or its employees acting within the scope of their employment "within ninety days after the claim arises." Failure to comply with this condition precedent is grounds for dismissing New York state-law claims in federal court. Cantave v. New York City Police Officers, No. 09-CV-2226 (CBA)(LB), 2011 WL 1239895, at *12 (E.D.N.Y. Mar. 28, 2011). Defendants argue that plaintiff did not serve a notice of claim in connection with this action. In addition to failing to plead that he filed a notice of claim, plaintiff failed to respond to defendants' argument, or offer any evidence suggesting that he did file a notice of claim. Robinson v. Roosevelt Un. Free School Dist., No. 10–CV–834 (SJF)(ETB), 2012 WL 1980140, at *11 (E.D.N.Y. May 31, 2012) (noting plaintiff's compliance with the notice of claim requirement is a pleading requirement which plaintiff has the burden of demonstrating); Henneberger v. County of Nassau, 465 F.Supp.2d 176, 198 (E.D.N.Y. 2006) . Accordingly, plaintiff's state law claims are barred by his failure to follow New York procedural requirements.

## III. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's claims of unconstitutional conditions of confinement and all claims under New York state law are dismissed. Defendant City of New York is dismissed from the action. Plaintiff's claim for false arrest and unlawful entry into his home are permitted to go forward.

SO ORDERED.

/S/

Allyne R. Ross
United States District Judge

Dated:     June 14, 2012
           Brooklyn, New York

SERVICE LIST

<u>Pro Se Plaintiff</u>
Johnnie Petway
556 Gates Avenue
Brooklyn, NY 11221